CALEB BARKER, proponent, respondent,

*v.*

ELIZABETH STREULI, caveatrix, appellant.

[Decided July 7th, 1905.]

1. A testatrix will be presumed to have had knowledge of the contents of her will where it appears that it was prepared according to instructions given by her, that, before its execution, it was in her possession long enough to permit her to read it, and after its execution, over night, with ample opportunity to read it, and that, in the morning, she sealed it up in an envelope and delivered it to her son for safekeeping.

2. Where a testatrix left nothing to the widow and child of a deceased son (assigning as a reason that they were otherwise amply provided for), but treated her other children with substantial equality— *Held,* not to show undue influence on the part of her son who was the executor.

———

*Messrs. Bedle, Edwards & Thompson,* for the appellant.

*Mr. Arthur R. Denman* and *Mr. Craig A. Marsh,* for the respondent.

BERGEN, VICE-ORDINARY.

The orphans court of the county of Essex decreed the probate of a paper purporting to be the last will of Julia A. Barker, deceased, from which judgment this appeal is taken. Three reasons are urged for reversal, viz.: Want of knowledge of contents of the will; lack of testamentary capacity, and undue influence exerted by the proponent. That the testatrix had knowledge of the contents sufficiently appears to justify the conclusions of the court below on this point. The testimony shows that the will was prepared according to instructions given by the testatrix to her son; that it was in her possession before execution long enough to permit its reading by her, for she had it on the table before her while her son went to a neighbor's to procure witnesses. She announced to the witnesses when they

came that it was her last will, and requested them to act as witnesses to its execution. The attestation clause is in full form, and the testatrix had the will in her possession over night, with ample opportunity to read it, and the next morning, after sealing it in an envelope, she delivered it to her son for safekeeping, who placed it in a safe deposit vault, where it remained unopened until after her death. It often happens, perhaps in most cases, that the will is not read in the presence of the witnesses, and the conduct of this testatrix justifies the finding of the orphans court that the will was drawn according to the express wishes of the testatrix, and that she was well acquainted with its contents.

The claim that the testatrix was lacking in testamentary capacity is not supported by the testimony. On the contrary, while advanced in years, she appears to have been in the possession of sufficient mind and will power to thoroughly understand the character of her property, to remember those who would naturally be the objects of her bounty and to discriminate between them, for after two small bequests of $100 each, she preferred her widowed daughter to the extent of $1,000, and then divided her estate equally by name among all her children living, and as to the widow of a deceased son explains the omission by the statement that she would be amply provided for otherwise. Whether the reason for this exclusion was a fair one is not important. Its expression, however, indicates that she had not overlooked that branch of her family in considering the objects of her bounty. On the argument it was insisted that as the caveatrix, a daughter of the deceased son, was not mentioned, although her mother was, an inference is properly drawn that the testatrix had not that knowledge of her family which necessary mental capacity requires. This contention has not, in my opinion, the support of legal authority, for it is not always necessary that a testator should have a complete recollection of his estate and family. But if the insistment of the appellant was the true rule, it is fully answered by the conduct of the testatrix, for who can doubt that she had in mind the representation of the grandchild by the mother when she gave the reason for omitting the mother from the class to whom she gave her estate, for if

she thought of the widow of her deceased son in arranging for the disposition of her estate, certainly the child of that widow cannot be said to have been beyond her recollection. Numerous letters written by the testatrix before and after the making of this will indicate that she had retained her faculties of mind to a sufficient degree to lawfully dispose of her property by a will.

The last objection, that she was unduly influenced to dispose of her property contrary to what she would have done if free from the dominating influence of her son, the proponent, cannot be sustained. The manner in which she has disposed of her property does not warrant any such inference, for, except the preference to a widowed daughter, and the exclusion of the granddaughter, who is the contestant here, her property goes in equal shares to her nearest relatives. The son whose undue influence, it is alleged, produced this will obtains no preference other than the joint benefit derived by himself and his brothers and sisters from the exclusion of the granddaughter, and that this exclusion was the deliberate determination of the testatrix is manifested by the fact that enclosed with this will, which was executed on November 5th, 1903, there was left by the testatrix a letter written by her under date of October, 1901. This letter is in the handwriting of the testatrix, and was undoubtedly prepared with reference to some prior will, as it antedates the contested paper. The letter reads as follows:

"MY DEARLY BELOVED CHILDREN—I most sincerely hope that the provisions of the accompanying will may be satisfactory to all. I have given the subject much thought and have arranged all, as nearly as possible, according to my sense of right and justice. As regards affection, it is the same for all—I know no difference. My dear son David's widow and daughter have not been mentioned, because they are apparently amply provided for, and it did not seem right that I should take from those of my children that were differently situated. It has not been from any lack of affection toward them. I feel quite sure that they will understand my motives. I fully realize the solemnity of what I am doing, and feel almost that I am communicating with you from another world, as this will not be read until after I have taken my final leave of you. My heart is full of love for you all, and my hope is that I may meet you all in another world, whither we are all journeying. I leave my heartfelt blessings for you all.

"YOUR LOVING MOTHER.

"October, 1901."

There is not the slightest proof that this letter was the result of any influence or suggestion, nor is there any proof worthy an instant's consideration that the proponent undertook to influence his mother in the making of the will, or that any of his acts are subject to any construction other than such kindness and consideration for an aged parent as is due from every dutiful child. To hold that such assistance as this son gave to his mother in the management of her business affairs is evidence of undue influence such as to destroy the testamentary disposition of property would tend to the destruction of filial affection through fear of the charge of undue influence should the parent by will bequeath a portion of his estate to a faithful child.

The reasons given by the learned judge of the orphans court express the law on this subject, and his conclusions are entitled to unqualified approval, and the decree of the orphans court will be affirmed.